# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EDVIS E. HENDERSON,** | : | **CIVIL NO. 1:18-CV-1534** |
| **Plaintiff** | : | **(Chief Judge Conner)** |
| v. | : | |
| **AMY FLATT MANNING,** *et al.*, | : | |
| **Defendants** | : | |

## **MEMORANDUM**

Plaintiff Edvis Henderson ("Henderson"), an inmate who was housed at all relevant times at the State Correctional Institution at Camp Hill, Pennsylvania, ("SCI-Camp Hill"), initiated this action pursuant to 42 U.S.C. § 1983. (Doc. 1). The matter is proceeding via an amended complaint. (Doc. 10). Named as defendants are Timothy Rutherford, Theodoor Voorstad, Hans Reisinger (hereinafter referred to as the "corrections defendants"), Sri Burger, M.D. ("Dr. Burger"), Amy Flatt Manning, and Mariya Kadier. Before the court are two Rule 12(b) motions (Docs. 22, 24) to dismiss filed by the corrections defendants and Dr. Burger, respectively.[1] Henderson failed to respond to defendants' motions and the time for responding

---

[1] Because defendants rely on documents outside the pleadings to support their arguments regarding exhaustion of administrative remedies, the court will address these arguments under the summary judgment standard. By order dated June 5, 2019, we placed the parties on notice that the court may consider exhaustion in its role as fact finder under <u>Small v. Camden County</u>, 728 F.3d 265 (3d Cir. 2013), and that the exhaustion arguments in this case will be analyzed under the rubric of summary judgment. (Doc. 30) (citing <u>Paladino v. Newsome</u>, 885 F.3d 203 (3d Cir. 2018)). The order also afforded the parties the opportunity to supplement the record with any additional evidence relevant to exhaustion of administrative remedies. (Doc. 30).

has now passed.[2]  Therefore, the motions are deemed unopposed and ripe for resolution.  For the reasons set forth below, the court will grant each pending motion.  The court will also dismiss the action against defendants Manning and Kadier pursuant to Federal Rule of Civil Procedure 4(m).

I.       **Allegations of the Amended Complaint**

Henderson alleges that he injured his knee after a slip and fall at SCI-Camp Hill.  (Doc. 1).  After the fall, Henderson underwent an x-ray.  (Doc. 10 at 1, 3).

On July 6, 2018, defendant Voorstad treated Henderson and observed his walk.  (Id. at 4).  Henderson avers that defendant Voorstad did not provide an adequate examination of his knee and did not order an MRI.  (Id.)

Henderson alleges that defendant Rutherford did not provide adequate medical care and gave him crutches instead of a wheelchair.  (Id. at p. 5).  Henderson similarly alleges that Dr. Burger did not provide any medical care and that a wheelchair was not issued to him for three days.  (Id. at 5).  As a result, Henderson had to walk with crutches, which caused pain.  (Id.)

After he was transferred to the State Correctional Institution at Rockview ("SCI-Rockview"), defendant Reisinger treated Henderson in the medical

---

[2] Henderson was granted an extension of time to file briefs in opposition to defendants' motions and was cautioned that failure to file opposition briefs would result in defendants' motions being deemed unopposed.  (Doc. 28 ¶ 3) (citing M.D. PA. LOCAL RULE OF COURT 7.6).  (See also Doc. 5, Standing Practice Order in Pro Se Plaintiff Cases, at 2).

department, but "did not have the necessary things to take fluid off knee or give [him] a shot." (Id. at 4). While housed at SCI-Rockview, another x-ray was ordered. (Id.).

## II. Legal Standard

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality. FED. R. CIV. P. 56(a). The burden of proof tasks the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The court is to view the evidence "in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." Thomas v. Cumberland County, 749 F.3d 217, 222 (3d Cir. 2014). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986). Only if this threshold is met may the cause of action proceed. See Pappas, 331 F. Supp. 2d at 315.

3

## III. Discussion

### A. Failure to Exhaust

All defendants argue that Henderson failed to properly exhaust his administrative remedies prior to filing the instant action. (Doc. 23 at 3-8; Doc. 25 at 3-6). The Prison Litigation Reform Act of 1996 (the "PLRA") requires a prisoner to pursue all avenues of relief available within the prison's grievance system before bringing a federal civil rights action concerning prison conditions. See 42 U.S.C. § 1997e(a); Booth v. Churner, 206 F.3d 289, 291 (3d Cir. 2000). Section 1997e(a) establishes the requirement of administrative exhaustion:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). The PLRA "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). It has been made clear that the exhaustion requirement is mandatory. See Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007); see also Booth v. Churner, 532 U.S. 731, 741 (2001) (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"); Nyhuis v. Reno, 204 F.3d 65, 67 (3d Cir. 2000) (same). "[I]t is beyond the power of [any] court . . . to excuse compliance

4

with the exhaustion requirement." Nyhuis, 204 F.3d at 73 (quoting Beeson v. Fishkill Corr. Facility, 28 F. Supp.2d 884, 894-95 (S.D.N.Y. 1998)).

To exhaust administrative remedies an inmate must comply with all applicable grievance procedures and rules. Spruill v. Gillis, 372 F.3d 218, 231 (3d Cir. 2004). The PLRA requires not only technical exhaustion of the administrative remedies but also substantial compliance with procedural requirements. Spruill, 372 F.3d at 227-32; see also Nyhuis, 204 F.3d at 77-78. A procedural default by the prisoner, either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim. Spruill, 372 F.3d at 227-32; see also Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000).

The Department of Corrections ("DOC") has an Inmate Grievance System, set forth in DC-ADM 804, which permits any inmate to seek review of problems that may arise during the course of confinement. See 37 PA. CODE § 93.9(a); PA. DEP'T OF CORR., No. DC-ADM 804. After an attempt to resolve any problems informally, an inmate may submit a written grievance to the Facility's Grievance Coordinator for initial review. This must occur within fifteen days after the events upon which the claims are based. Within fifteen days of an adverse decision by the Grievance Coordinator, an inmate may then appeal to the Facility Manager of the institution. Thereafter, within fifteen days of an adverse decision by the Facility Manager, an inmate may file a final appeal to the Secretary's Office of Inmate Grievances and

5

Appeals ("SOIGA"). An appeal to final review cannot be completed unless an inmate complies with all established procedures. An inmate must exhaust all three levels of review and comply with all procedural requirements of the grievance review process in order to fully exhaust an issue. See Booth, 206 F.3d at 293 n. 2 (outlining Pennsylvania's grievance review process); Ingram v. SCI Camp Hill, 448 F. App'x 275, 279 (3d Cir. 2011) (same).

The record reflects that Henderson filed one grievance pertaining to the claims in this action.[3] On June 8, 2018, Henderson filed grievance number 741600. (Doc. 22-1 at 2). In the grievance, Henderson explained that he slipped and fell on May 28, 2018, injuring his knee. (Id.) He stated that he was examined by medical on the day of the injury, he was treated again and provided ice on June 1, 2018, and underwent an x-ray on June 3, 2018. (Id.) Henderson complained that his knee was still swollen. (Id.) Henderson did not identify any individual medical providers in his grievance. (See id.) On July 5, 2018, the Facility Grievance Coordinator denied the grievance. (Doc. 22-1 at 3). The Facility Grievance Coordinator noted that, after

---

[3] The record also reflects that Henderson filed three other grievances during the course of his incarceration. (Doc. 22-1 at 1, 4-12). None of those grievances relate to the claims in the instant lawsuit. (Id.) On March 31, 2018, Henderson filed grievance number 728701 regarding his financial obligations to the Department of Corrections. (Id. at 4-8). On June 6, 2018, Henderson filed grievance number 741661 complaining that he was not receiving mail that his wife was sending to him. (Id. at 9-10). On July 13, 2018, Henderson filed grievance number 746733 regarding personal property that he lost during his transfer from SCI-Camp Hill to SCI-Rockview. (Id. at 11-12).

6

his injury, Henderson was issued a pair of crutches for short distances, a wheelchair for long distances, a knee sleeve, and a 6-inch ACE wrap. (Id.)  Henderson did not file any appeals of this grievance.  (See Doc. 22-1).

The record establishes that Henderson failed to exhaust his administrative remedies with respect to grievance number 741660.  The PLRA mandates that inmates properly exhaust their administrative remedies before suit in federal court, a requirement which demands compliance with an agency's deadlines and procedural rules.  Woodford, 548 U.S. at 90-93.  Henderson did not do so in this case.  Grievance number 741600 was denied on initial review.  Grievance number 741600 was not appealed to the Facility Manager or to final review.  The SOIGA confirmed that Henderson has not filed any grievances to final appeal with their office.  (Doc. 22-1 at 1).  Henderson has not presented any evidence to refute these facts.

Under certain circumstances, administrative remedies may not be effectively available to an inmate, preventing a timely pursuit of the prison grievance process.  See, e.g., Camp, 219 F.3d at 281; Robinson v. Superintendent Rockview SCI, 831 F.3d 148, 154 (3d Cir. 2016) (holding that prison officials rendered plaintiff's administrative remedies unavailable when they failed to timely respond to his grievance and ignored his follow-up requests for a decision).  The record simply does not support a finding that the administrative process was unavailable to

7

Henderson. To the contrary, it establishes that Henderson had ready access to the administrative remedy process.

Henderson's transfer from SCI-Camp Hill to SCI-Rockview does not excuse his exhaustion requirement. The Third Circuit Court of Appeals has found that the transfer of an inmate to another facility does not excuse the PLRA's exhaustion requirement. See Williamson v. Wexford Health Sources, Inc., 131 F. App'x 888, 890 (3d Cir. 2005) (affirming grant of summary judgment for failure to exhaust against plaintiff where plaintiff was transferred to a different prison after filing administrative claim, which plaintiff did not appeal). Likewise, the Sixth Circuit stated in Napier v. Laurel Cnty., Ky., 636 F.3d 218 (6th Cir. 2011), "[g]enerally, the transfer of a prisoner from one facility to another does not render the grievance procedures at the transferor facility 'unavailable' for the purposes of exhaustion.'" Id. at 223 (citations omitted). Henderson does not assert that the prison's administrative grievance policy restricts transferred prisoners from completing the administrative review process, and Henderson continued to file grievances while housed at SCI-Rockview. (See Doc. 22-1 at 11-12).

It is clear that Henderson failed to exhaust administrative remedies before initiating the instant action. Moreover, Henderson has not demonstrated that his failure to fully pursue such administrative relief should be excused. Thus,

Henderson's claims are barred on administrative exhaustion grounds, and defendants are entitled to summary judgment.

### B. State Law Medical Malpractice Claims

Because judgment will be entered against Henderson on all federal claims, the court declines to exercise supplemental jurisdiction over the state law medical malpractice claims. See 28 U.S.C. § 1367(c)(3); Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988); McBride v. Putnam, 156 F. App'x 531, 535 (3d Cir. 2005) (holding that the district court properly decided against exercising its supplemental jurisdiction over inmate's state law claims of medical malpractice that remained after all federal claims were dismissed for failure to exhaust administrative remedies).

## IV. Federal Rule of Civil Procedure 4(m)

Rule 4(m) sets forth the following time frame a plaintiff has to serve a defendant with the summons and copy of the complaint:

> If a defendant is not served within 90 days after the complaint is filed, the court -- on motion or on its own after notice to the plaintiff -- must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

FED. R. CIV. P. 4(m).

Defendants Amy Flatt Manning and Mariya Kadier were named in the amended complaint that was filed on October 25, 2018 and, to date, have not been

served in this case. The court must engage in a two-step process in determining whether to dismiss the non-served defendants or grant Henderson additional time to effect service. "First, the district court should determine whether good cause exists for an extension of time. If good cause is present, the district court must extend time for service and the inquiry is ended. If, however, good cause does not exist, the court may in its discretion decide whether to dismiss the case without prejudice or extend time for service." Petrucelli v. Bohringer & Ratzinger, 46 F.3d 1298, 1305 (3d Cir. 1995). Good cause requires good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance with the time specified in the rules. MCI Telecomm. Corp. v. Teleconcepts, Inc., 71 F.3d 1086, 1097 (3d Cir. 1995). In determining whether good cause exists, a court's "primary focus is on the plaintiff's reasons for not complying with the time limit in the first place." Id. Although prejudice is a factor to be considered, the absence of prejudice to the opposing party alone does not constitute good cause to excuse late service. Id.

Henderson fails to establish good cause. As a threshold matter, we note that Henderson's *pro se* status is not good cause to excuse his failure to timely serve these defendants. Veal v. United States, 84 F. App'x 253, 256 (3d Cir. 2004). After the expiration of the ninety-day time period set forth in Rule 4(m), the court notified Henderson that the action against defendants Amy Flatt Manning and Mariya

10

Kadier was subject to dismissal, and directed him to show cause why the action against these defendants should not be dismissed pursuant to Rule 4(m). (Doc. 33). In response to the court order, Henderson submitted two documents that purport to be waivers of service. (Doc. 34). However, these documents fail to contain any information with respect to actual waivers of service completed by Amy Flatt Manning and Mariya Kadier. Each form appears to bear a signature by an individual in "Building E". The signatures are illegible and are not on any formatted line. The remainder of the forms are blank, and all formatted lines are blank. Neither of the named defendants, nor an attorney acting on their behalf, completed any aspect of the waiver of service forms. (See id.) It is readily apparent to the undersigned that neither of the defendants waived service of process. Hence, the court finds that defendants Manning and Kadier were not properly served in this case.

It is Henderson's responsibility to properly identify all defendants, and provide accurate mailing addresses for the defendants, in a timely fashion. (See Doc. 11, ¶ 4) (advising Henderson that failure to properly name a defendant, or provide an accurate mailing address for a defendant, may result in dismissal of the claims against that defendant pursuant to Federal Rule of Civil Procedure 4(m)). Henderson was granted the opportunity to effect proper service and was notified that the non-served defendants were subject to dismissal pursuant to Federal Rule

11

of Civil Procedure 4(m). (Doc. 33). Henderson failed to identify proper addresses and failed to otherwise effect proper service of these defendants. Henderson's purported waivers of service are no such things. They are woefully non-conforming and improper. These purported waivers fail to demonstrate good faith as no reasonable person could construe them as Rule 4 compliant. As a result, the non-served defendants will be dismissed from this action pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.

## V. <u>Conclusion</u>

For the reasons set forth above, the court will grant defendants' motions (Docs. 22, 24) and enter summary judgment in their favor. The court will also dismiss the action against Amy Flatt Manning and Mariya Kadier pursuant to Federal Rule of Civil Procedure 4(m).

An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court

Dated: September 5, 2019